SAMUEL BRINKERHOFF et al., Appellants, v.
CHARLES G. JUDEN et al.

Division One, March 3, 1914.

1. **EQUITABLE ESTATE: In Lands Not Described in Deed: Trust Relation.** When the owner of lands made a warranty deed to his daughter, conveying the lands in suit, for a recited consideration of $21,000, none of which was paid, and on the same day filed it for record, and she executed a deed of trust on the lands to secure her note for $9000, given him, not in payment for the lands, but that he might obtain a right to buy them from the county in case he was sued by the county for the purchase price, whatever title her father had in the lands passed to her, either as an executed gift or an advancement determinable by the intention of the parties and the attendant facts; and if she and her father subsequently conveyed other lands of the same character and acquired in the same way, and he by a separate deed, in which she did not join, attempted to convey the lands in suit, his deed did not convey her interest therein and he had no equitable estate therein to convey, unless his warranty deed to her was not what it purported to be, but simply evidenced a trust in the property in her father's favor as beneficiary, and that it was such can be established only by clear, cogent and convincing proof. And statements made by her father, and conduct on his part in which he dealt with the lands as if they were his, all without her knowledge, and without any showing of ratification by her, are not sufficient to establish an equitable ownership in him.

2. **CONVEYANCE:    Mutual Mistake in Description of Lands:' Omission.** Where there was no previous agreement between the owner of the lands in suit and the grantee named in a deed as to what lands were to be conveyed; where said owner had never been asked by said grantee to sell said lands, and she had never had any written or oral communication with him or his agent; where said grantee knew she owned the lands in suit, and there was no evidence that the scrivener made a mistake in writing the deed or that he was her agent, the omission of the lands in suit from a deed conveying other lands to said grantee executed by her and her father, cannot be said to be the result of mutual mistake; nor is that conclusion altered by the fact that on the same day her father, by a deed executed by him and his wife alone, attempted to convey to said grantee the lands in suit, which had been previously conveyed to her by her father without any consideration paid.

3. **SALE OF SWAMP LANDS: Paid For By Drainage Ditch and Embankment: Void Patents.** Swamp lands belonging to a county may be paid for by the construction of drainage ditches to drain the lands, and if the ditches dug in pursuance of the contract of sale are so located and of sufficient size to drain and reclaim the lands from the overflow waters to which they are exposed, and if the cost of the ditches is reasonable and not less than the minimum price fixed by the statute for such lands, the patents are not void or voidable; but if no ditch is dug, and the excavation work done results in no drainage system adequate to carry off periodical overflows, but consists only of a succession of holes in the ground, made by throwing up earth to construct an embankment upon which a railroad track is laid, and which is entirely worthless for drainage or reclamation purposes, the conveyance rests upon no consideration, and is a mere gift; and if the patents or the records to which they refer reveal no consideration, they are void; but if such infirmity must be established by *aliunde* evidence, they are only voidable.

4. ————: **Regular on Face and Records.** Where the patents to the swamp lands recite that the patentee "has made full payment according to the terms of the record of the said sale made by the court by its proper order entered of record on the second of September, 1891, for the land," and the record referred to was an offer to pay $1.25 per acre for the land, the payment to be made by the construction of an ample drainage ditch, and the acceptance of said offer, the patents were not void on their face, nor would their invalidity appear from an examination of the records to which they referred; for the construction of a drainage ditch adequate to drain the lands would have been a valid and legal consideration, and that the drainage system was not constructed, and that the consideration for the patents therefore failed, can be shown only by oral testimony or proof outside of the patents and records referred to. Hence, the patents are not void, but only voidable, and can be avoided only by a suit in equity to rescind, brought against the patentee or persons claiming under him who are not innocent purchasers, for value, without notice.

5. ————: **Voidable Patents: Suit by Grantee of Subsequent Legal Patentee.** But notwithstanding said patents might have been avoided by a suit in equity brought by the county against the patentee or his grantees with notice, because of a total failure of consideration, they cannot be avoided by a suit in equity brought by the grantee, for value, of said patentee, who knew that the consideration had not been paid, and when he and the patentee were sued by the county, settled the matter by paying the county $1.25 per acre for the swamp lands and receiving new patents; nor can they be avoided by the grantees

of said subsequent patentee, unless it be shown that the patents assailed were designed to defraud such purchasers and that this intent was shared by the county court and the first patentee. The fact that such subsequent patentee, before he acquired his patents from the county, obtained a deed for the lands in suit from the first patentee alone, who had previously conveyed them by recorded warranty deed to his daughter, and that such subsequent patentee conveyed them to plaintiffs, affords them no ground upon which to have the first patents declared void, the evidence clearly showing that there was no intention to defraud them.

6. ——: ——: **Innocent Purchaser: Fraudulent Conveyance.** The statute (Sec. 2882, R. S. 1909), debars a second purchaser from a grantor, who made a prior fraudulent conveyance, from any attack upon such conveyance if it is recorded when he bought and paid for the land or if he then knew of its existence, unless he can prove that such conveyance was made to defraud him. It will not be sufficient to show it was voluntary or prejudicial to the rights of other persons.

Appeal from Ste. Genevieve Circuit Court.—*Hon. Charles A. Killian*, Judge.

AFFIRMED.

*W. M. Williams, Arthur L. Oliver, Victor A. Remy, Moses Whybark* and *George B. Webster* for appellants.

(1)   The conveyance by Pemiscot county to Houck violated our swamp land laws, and it is therefore invalid.   Railroad v. Hatten, 102 Mo. 55; Railroad v. Wayne County, 125 Mo. 357; Estate Co. v. Wayne County, 123 Mo. 478; Sturgeon v. Hampton, 88 Mo. 213; Hooke v. Chitwood, 127 Mo. 376. An examination of the opinion in Simpson v. Stoddard County, 173 Mo. 421, shows that it does not overrule, but adheres to the prior decisions. This is very clearly proved by recent opinions of this court, in: Wheeler v. Land Co., 193 Mo. 292; Whitman v. Giesing, 224 Mo. 616. (2) Cape Girardeau & Southwestern Ry. Co. v. Hatten, 102 Mo. 45, established a rule of property, upon the faith of which appellants' grantor purchased the lands in suit. To reverse that case and

destroy by a contrary decision, the validity of Franklin's patents and subsequent conveyances made while that decision stood, would violate rights guaranteed to appellants by both the State and Federal constitutions. Dunklin County v. Chouteau, 120 Mo. 592; Muhlker v. Railroad, 197 U. S. 544; Rowan v. Runnels, 5 How. 134; Life Ins. & Trust Co. v. Debolt, 16 How. 416; Lumber Co. v. Mississippi, 97 Miss. 571. (3) Appellants as the grantees of Franklin, the junior patentee of Pemiscot county, may maintain this suit. Wheeler v. Land Co., 193 Mo. 290; Moss v. Kauffman, 131 Mo. 427. The rule laid down in Weissenfels v. Cable, 208 Mo. 515, which afforded the basis of the decision below, is founded on champerty and maintenance. Wilson v. Railroad, 120 Mo. 58; Smith v. Harris, 43 Mo. 562. But here, neither champerty nor maintenance exists. Duke v. Harper, 2 Mo. App. 4; Torrence v. Shedd, 112 Ill. 475; 1 Bouvier's Law Dictionary (15 Ed.), 299; 2 Bouvier's Law Dictionary (15 Ed.), 137. Therefore, to apply the Weissenfels v. Cable rule would not only be unreasonable, but would be contrary to the decisions of this court and to the public policy of this State. Wheeler v. Land Co., 193 Mo. 292. Moss v. Kaufman, 131 Mo. 424, guaranteed to Franklin when he purchased from the county a remedy against any claim under the Houck patent. This remedy cannot now be taken away from Franklin's grantees. Butz v. Muscatine, 8 Wall. 575. (4) Wholly regardless of the invalidity of the Houck patents, title should be declared in appellants, because: (a) Houck's deed to his daughter, of June 28, 1898, made her a mere trustee to hold the naked legal title for her father's benefit. Olden v. Hendricks, 100 Mo. 539; In re Peabody, 118 Fed. 268. This trust was clearly manifested by the trust deed to Blomeyer of June 28, 1898. Moore v. Carling, 29 N. J. Eq. 436; Barrell v. Joy, 16 Mass. 221. The entire equitable title remained in Houck, and after he conveyed it to

Franklin, either the latter or his grantees were entitled to demand from the trustee a transfer of the legal title. Rylands v. Bank, 151 Mo. 10; Hafner v. St. Louis, 161 Mo. 35; Ives v. Harris, 7 R. I. 424; Eliott v. Armstrong, 2 Blackf. (Ind.) 207. (b) Aside from this, the failure of Irma Houck's deed to Franklin, of April 20, 1899, to describe the lands in suit, was due entirely to a mutual mistake, which a court of equity will remedy by reforming the deed. Sicher v. Rambousek, 193 Mo. 129; Barry v. Rownd, 119 Iowa, 105; McCain v. Finance & Trust Co., 29 Ky. L. R. 1292; Parish v. Camplin, 139 Ind. 1; Lyon v. Pollock, 99 U. S. 668; Ezell v. Peyton, 134 Mo. 490; Hill v. Kuhlman, 87 Fed. 500; Norris v. Sargeant, 126 Mich. 557.

*Edward A. Rozier* and *Martin L. Clardy* for respondents.

(1) The title to all swamp and overflowed lands passed from the general Government to the State of Missouri, by the Act of September 28, 1850. This act has been held to be an act *in praesenti,* although the identity of such lands was determined later. Simpson v. Stoddard Co., 173 Mo. 444; Railroad v. Smith, 76 U. S. 96; Wright v. Roseberry, 121 U. S. 488; Irwin v. Savings Union, 136 U. S. 478, 28 Fed. 708; Tubbs v. Willoit, 138 U. S. 134; Fletcher v. Pool, 20 Ark. 100; Hendry v. Willis, 33 Ark. 833; Branch v. Mitchell, 24 Ark. 431; State v. Bank, 106 Ind. 435; Bailey v. Callahan, 87 Iowa, 107. While the Act of September 28, 1850, gave the lands to the State for the purpose of reclamation, such trust has been held not to run with the lands, but to be a personal trust of the State. Simpson v. Stoddard Co., 173 Mo. 444; Pool v. Brown, 98 Mo. 675; Dunklin County v. County Court, 23 Mo. 449; Mills v. Railroad, 107 U. S. 557; Whiteside Co. v. Burchell, 31 Ill. 68; Graston v. Scott, 5 Ore. 48; LaPointe v. Ashland, 47 Wis. 271; Wilson v. Beckwith, 140 Mo. 386. "The title to these swamp lands was vested in

the counties to be disposed of in the discretion of the county courts. In selling the lands they possessed the same powers that owners generally possess under like circumstances.'' Simpson v. Stoddard Co., 173 Mo. 421; Linville v. Bohannon, 60 Mo. 554; Funkhouser v. Mallen, 62 Mo. 555; Viele v. Van Sternberg, 31 Fed. 249; Lumber Co. v. Blackman, 202 Mo. 296; Pine Co. v. Hall, 105 Fed. 91; Boynton v. Haggart, 120 Fed. 819. ''We have no hesitancy in putting our fingers on section 6 of the Act of 1869 [now Sec. 8028, R. S. 1909], as the authority for the county courts to sell and convey the swamp lands in their respective counties at private sales and for less than $1.25 as was unanimously held by this court in Pool v. Brown, 98 Mo. 675.'' Simpson v. Stoddard Co., 173 Mo. 421. (2) A patent to swamp lands made by order of the county court will pass the title of the county. Prior v. Scott, 87 Mo. 303; Hall v. Gregg, 138 Mo. 292; Stone v. Perkins, 217 Mo. 598. A patent to swamp lands from the county, regular on its face and based on order of the county court, is valid until set aside by appropriate proceedings. Simpson v. Stoddard Co., 173 Mo. 458; Frank v. Goddin, 193 Mo. 399; Cramer v. Keller, 98 Mo. 279; Sorpy v. Papin, 7 Mo. 503; Elliott v. Buffington, 149 Mo. 676; Hall v. Gregg, 138 Mo. 286; Alt v. Stoker, 127 Mo. 466; Pool v. Brown, 98 Mo. 684. This patent is a valid patent and at most subject to its rescission for failure to make full payment. 29 Am. & Eng. Ency. Law, 1065; Hume v. Egan, 73 Mo. App. 276; Kearney v. Vaughn, 50 Mo. 287; Stuart v. Rector, 1 Mo. 361; Mitchell v. Parker, 25 Mo. 31; Holme v. Steatman, 35 Mo. 308; Railroad v. Trust Co., 95 Fed. 525; Candy Co. v. Ins. Co., 41 Mo. App. 543; Waddel v. Williams, 50 Mo. 222; Och v. Railroad, 136 Mo. 45; 8 Am. & Eng. Ency. Law, 819, sec. 10. It being practically conceded that the patents issued to Houck are only voidable, then the subsequent act of Pemiscot county in issuing patents to Franklin was a nullity. For the court, while the out-

standing patent was uncanceled, absolutely had no jurisdiction to take steps toward selling the lands so patented. Stone v. Perkins, 217 Mo. 586; Elliott v. Buffington, 149 Mo. 663; Cunningham v. Snow, 87 Mo. 591. (3) This proceeding is not a direct attack, but only a collateral attack, and the county court having jurisdiction of the subject-matter, acting within the express power granted to it by the statute, and the order directing the issue and the patent reciting that the consideration had been paid in full, shows that the county court found all the necessary facts to justify the order, the same stands upon the plane of any other judgment of any other court and entitled to all the verities of such judgments. Frank v. Goddin, 193 Mo. 398; State ex rel. v. Searcy, 39 Mo. App. 393; State ex rel. v. Searcy, 46 Mo. App. 421; State ex rel. v. Searcy, 111 Mo. 236; State v. Dugan, 110 Mo. 138; State v. Evans, 83 Mo. 319; Leonard v. Sparks, 117 Mo. 103; Hadley v. Bernero, 103 Mo. App. 549; State ex rel. v. McCord, 207 Mo. 523; State ex rel. v. Huff, 105 Mo. App. 361; Bremen v. Mante, 108 Mo. App. 339; Hathaway v. Railroad, 94 Mo. App. 343; State v. Weatherby, 45 Mo. 17; Jeffries v. Wright, 51 Mo. 220; Johnson v. Bragley, 65 Mo. 250; Fulkerson v. Davenport, 70 Mo. 541; Scott v. Crews, 72 Mo. 263; Henry v. McKerlin, 78 Mo. 416. "The patent to Powell is in conformity to statute and was effectual to pass the title of the county to this land and vest it in Powell, provided the title was in the county at the time of the issuing of the patent. The patent read in evidence by defendant was junior in date, and of course did not convey any legal title to the patentee, as it had already passed under the antecedent grant to Powell." Cunningham v. Snow, 82 Mo. 591; Stone v. Perkins, 217 Mo. 598; Allison v. Hunter, 9 Mo. 750; Griffith v. Deerfelt, 17 Mo. 31; Carman v. Johnson, 20 Mo. 110. The infirmity, if infirmity it be (the failure to pay not less than $1.25 per acre for accreted lands), does not appear on the

face of respondent's patents and the proceedings lead-
ing up to the same. It arises from an exceedingly
complicated mathematical calculation. Can such col-
lateral assault on this patent be allowed? We think
not. It must be remembered that the genuineness of the
patent is not assailed. If therefore the irregularity
appeared in the very proceedings or in the patent it-
self, the rule might be different and the patent held
void, when offered in evidence. Morgan v. Stoddard
County, 187 Mo. 323. But the better doctrine, in cases
where the irregularity is made to appear by matter
*in pais dehors* the court record, is that the patent should
be avoided by a direct proceeding, and that while it re-
mains operative and free from direct assault, it may not
be overthrown by indirection in a collateral proceeding
such as this. Simpson v. Stoddard Co., 173 Mo. 458;
Frank v. Goddin, 193 Mo. 390. (4) Parol evidence
is admissible to show the real consideration of a deed,
yet it is not permitted to, by parol, defeat the convey-
ance. Edwards v. Latimer, 183 Mo. 626; Dobyns v.
Beneficiary, 144 Mo. 109; McConnell v. Brayner, 63
Mo. 461; Fontaine v. Bank, 57 Mo. 552; Squier v. Evans,
127 Mo. 514; Lambert v. Estes, 99 Mo. 408. It would
seem that plaintiffs, having introduced in evidence the
patent, are now estopped from denying its operative
effect. Edwards v. Latimer, 183 Mo. 627. And even
if it be considered that the lack of consideration can
be inquired into, same can only be done to recover the
balance of the consideration and not to defeat the in-
strument. Am. En. Co. v. Adams Co., 100 U. S. 61.
The offer of Houck is a straight offer to buy and the
same was accepted on the 2nd day of September, 1891,
and a patent issued; hence the depositing of collateral
with a solvent note could be treated as payment for it,
and it must be held that the county court could sell the
general property of the county upon such terms; and
hence under the statute and the Simpson case can also

255 Mo. 45

sell the swamp lands. Simpson v. Stoddard Co., 173 Mo. 421. The sale cannot be impeached for any dereliction of duty of the trustees, if the purchase price could be collected, and the evidence shows that this could have been collected. Mills Co. v. Railroad, 107 U. S. 557. A vender's lien remained in Pemiscot county for any unpaid consideration. Davenport v. Murray, 68 Mo. 200. (5) The senior patent passed all the title of Pemiscot county. Stone v. Perkins, 217 Mo. 598; Cunningham v. Snow, 82 Mo. 591; Elliott v. Buffington, 149 Mo. 663. It is suggested, at least argumentatively, in St. Francois Mill Co. v. Suggs, 206 Mo. 159, that when patents are issued, subsequent to the first patents, such second patents should on their face show that they have been issued in lieu of former patents; and that if patents are issued without reference to any former patent this negatives the idea that any former patents had been issued. (6) The right to set aside these patents for alleged fraud is not a vendible commodity, hence plaintiffs have no cause of action. Weissenfel v. Cable, 208 Mo. 532. (7) Irma Juden gave a valuable consideration. Drey v. Doyle, 99 Mo. 459; Anderson v. Cole, 234 Mo. 4; Warren v. Wilder, 114 N. Y. 209. (8) Irma Juden was not a trustee. Especially see Alden v. Hendrick, 100 Mo. 533, cited and relied on by appellant. No trust of this character could be created except by the agreement of the two parties, the trustee and the beneficiary. Derry v. Fielder, 216 Mo. 193; Weiss v. Heitkamp, 127 Mo. 30. And no trust has ever been held to arise against the positive denial of each of the parties, no rights of creditors intervening. (9) There was no mutual mistake. Benn v. Pritchett, 163 Mo. 572; Dougherty v. Dougherty, 204 Mo. 238; Henderson v. Beasley, 137 Mo. 203; Adkins v. Tomlinson, 121 Mo. 487; Matthews v. Kansas City, 80 Mo. 235; Cassidy v. Metcalf, 66 Mo. 531; Norton v. Bohart, 105 Mo. 615. Louis Houck had no written authority to sell Irma

Juden's property, and his acts as her agent were not ratified.

## STATEMENT.

This suit to determine title to 2255.13 acres of swamp land acquired by the State under the Act of Congress of 1850, was brought in Pemiscot county, November, 1904, and was taken by change of venue to Ste. Genevieve county, where judgment was rendered for defendants, from which plaintiffs duly appealed.

The petition prayed that a patent to Louis Houck of the lands in suit, granted by the county court of Pemiscot county, be declared void for fraud or illegality, and that a warranty deed for said lands from Houck to daughter, Irma Juden, born Houck, now deceased, and represented here by a revivor in the name of her heirs, be declared void; and otherwise, that a quitclaim deed from Houck, his wife and daughter to the plaintiffs' grantor be corrected so as to cover the lands in suit, which the petition states were omitted by mistake. The answer averred the validity of the patent to Houck and the statute of limitations, laches and estoppel, in bar of this action.

The evidence shows that the parties claimed a common source of title, Pemiscot county, and deraign their respective titles from said county as follows: appellants, as subgrantees of J. E. Franklin, whose title is based: first, upon two patents issued to him by the county court of Pemiscot county, the one dated April 25, 1899, which was corrected on August 17, 1908, by inserting the name of the county instead of the State as grantor, this patent conveyed a portion of the land in suit, and another patent issued April 25, 1899, conveyed the remainder of the land in suit; second, a quitclaim deed from Houck to his wife made April 20, 1899, conveying the land in suit and other lands to J. E. Franklin; third, a quitclaim deed of the

same date executed by Houck, his wife and daughter, Irma Juden, to J. E. Franklin, conveying other land which appellants claim omitted, by mutual mistake, the lands in suit, to which a deed had been executed to Irma Houck by her father and mother on June 28, 1898.

The respondent Irma Houck, the material defendant, set up title under the deed last mentioned and under patents of these lands and others to her father, Louis Houck, issued by Pemiscot county on November 3, 1891, to amend a similar patent issued September 2, 1891, and a quitclaim of an undivided half interest in the land in suit and other land, in 1894, from Louis Houck to J. E. Franklin, and a quitclaim deed of Franklin back to Houck in 1896 embracing the lands in suit and others.

The material facts out of which these two sets of deeds and patents arose, were: that on September 2, 1891, Louis Houck offered in writing to buy all the unsold swamp land in Pemiscot county by giving his note for $1.25 per acre, amounting to $51,389.83, and to secure the same by deposit of collateral for $60,000 of bonds on the future extension of the C. G. & S. W. R. R. Co. On the same day the county court issued to Houck a patent for said lands, reciting that Houck had "made full payment according to the terms of sale" for said lands, describing them. On the same day the court entered an order accepting his additional offer to construct a canal ditch or waterway across the county and an embankment along the same for $51,389.83, and to induce some railroad company to operate a standard gauge railroad upon it; and executed a contract to that effect.

About two months thereafter, the court issued a new or supplementary patent correcting the recital in the first, that the sale was made in conformity with the Act of the Legislature of February 27, 1857. This amendatory patent, as did the original, contained the

following statement: "Whereas it appears to the satisfaction of the county court of Pemiscot that Louis Houck has made full payment according to the terms of sale, made by said court by its proper order entered of record on the second day of September, 1891, for the following described lands."

Extension of time for the completion of the work was obtained by Houck, and in 1894 he obtained the cooperation of J. E. Franklin, to whom he conveyed a half interest in the land. Thereafter, December 31, 1894, the county court canceled the obligation and note of Houck to it, and delivered to him his collateral, and accepted the performance of his contract, and took a bond from him in the sum of $500, requiring said Houck and Franklin, who was a coowner with Houck of an undivided half interest in said land, to make a contract with the board of directors of the St. Francois Levee District to construct 10,000 cubic yards of levee between Gayso and Caruthersville in Pemiscot county, Missouri, at a price to be agreed upon, not to exceed the usual price, and to keep the ditch or canal and embankment erected by Houck, under his contract with Pemiscot county dated September 2, 1891, for the reclamation of swamp land, in good repair for five years, and to cause to be constructed on said embankment a railroad track extending from the west boundary of the county to a point one mile from Caruthersville on or before 1895, and to operate cars thereon. Cars began to run upon this embankment about the 25th day of January, 1895.

In 1897 the Pemiscot county court ordered a suit to be brought against Houck and Franklin to recover the lands described in above patents, which action was not brought until 1898. Before that date Houck, on the 28th of June, 1898, conveyed the land in dispute in this case and certain other lands to his daughter, Irma, for a recited consideration of $21,000. The evidence shows that no part of this consideration was

paid, but the deed was duly recorded. On the same day the grantee therein, Irma Houck, executed a trust deed on said lands as security for her note for about $9,000, which was made to obtain for her father a right to buy the property involved in the suit of the county against him and Franklin, in case they were cast in that suit. A similar transaction was entered into by J. E. Franklin to secure a similar option to himself.

Houck in his answer to that suit of the county averred that he was the owner of the lands described in the deed from him to his daughter. The answer of J. E. Franklin filed to the suit of the county and Houck, set up that he had purchased one half of the lands from Louis Houck in 1894 for a valuable consideration, and that they had been conveyed to him in severalty, and pleaded peaceable possession from the date of the purchase, and that the patents to Houck were fair on their face, wherefore, he had acquired title.

During the pendency of that suit, Franklin agreed to buy from Houck all the lands involved in the suit of the county against them and to terminate the suit by paying Pemiscot county for said lands at the rate of $1.25 per acre. In pursuance of this plan Houck, and wife, on April 20, 1899, executed a quitclaim deed to Franklin conveying the lands involved in this suit and other lands. On the same day Houck and wife and daughter made a second quitclaim deed to Franklin, conveying certain lands, but omitting therefrom the land in suit, which had been conveyed to the daughter. Franklin paid Houck for all the lands described in both deeds, estimated at the rate of one dollar per acre, and then settled with the county at $1.25 per acre, making part of the payment in cash and the remainder in ditching or drainage work. The county then dismissed the suit, and on April 25, 1899, issued its patents cov-

ering the land to Franklin, from whom the present plaintiffs acquired title by mesne conveyances.

The evidence shows that the land in suit was wild and uncultivated. The testimony relative to the making of the deed by Houck and wife to his daughter, Irma Juden, was: that Houck proposed to sell to Franklin at the price of a dollar per acre; that Franklin accepted the proposition; that Houck explained that some of the land was in the name of his daughter; that the two deeds to Franklin were prepared by a clerk or scrivener in Houck's office; that the one from Houck and wife conveyed about 2500 acres, and the one from Houck and wife and daughter about 4500 acres; that Franklin never had any conversation with Irma Juden at the time or any communication in writing with her at any time; that when he discovered in 1904, after he had sold the lands in suit, that they were not embraced in the deed which he received from Houck and wife and daughter, he called upon him, asking that the mistake be corrected; that Houck told him that his daughter had married and that her husband would speak for her; that as far as he, Houck, was concerned, he would return to Franklin any sum of money overpaid by him for the lands in question.

Houck testified that the reason he had claimed to own the lands in his answer to the suit of the county, was that he felt responsible for the title to the lands, and ''did not wish to draw his daughter into the litigation.''

Mrs. Juden testified that her father gave her the lands in suit, together with a large quantity of other lands, without any explanation of how he had acquired them; that she knew nothing of his contracts or deals with Pemiscot county, nor of its court records; that she had never seen any of the orders of that court in relation to the sale of the swamp lands to her father; that she was unmarried at the time and lived in his home; that until her marriage he attended to her busi-

ness matters, since her marriage her husband had done so; that he asked her to join in a deed to Mr. Franklin of a part of the land he had given her, which she did; that she did not get the money that Franklin paid, but that her father has given her thousands of dollars and large quantities of land; that she never had any conversation with Franklin about these lands in suit, and did not agree to quitclaim to him her title to all of the unsold balance of the 41,111.86 acres of swamp land; that she had no knowledge of any fraudulent design on the part of her father or anybody else to secure the swamp lands of Pemiscot county without paying for them; that she had no knowledge of the orders of the county court with reference thereto, when she accepted the deed from her father, concluding her testimony as follows: "As to the lands sued for, I never agreed to sell the same to Mr. Franklin or anyone else, never agreed to join in a deed with my father to Mr. Franklin for said lands, and Mr. Franklin nor anyone else has ever paid me or any one for me any consideration whatever for said lands. The whole matter was negotiated and transacted by my father."

The ditch dug by Houck resulted from excavation for the railroad embankment over which trains began to operate on the 25th of January, 1895. For this work Houck and Franklin were contractors employed by the railroad corporation and paid therefor by its stock and securities. Any other facts material to the discussion will be referred to in the opinion.

OPINION.

I.

BOND, J. (after stating the facts as above).— The position taken by counsel for appellants both in oral argument and in their briefs is, first, that the patents issued to Louis Houck were void or voidable, and

in either event since Irma Juden was a volunteer, the
decree should have been in their favor; second, if the
Houck patents were neither void nor voidable in this
action, then Houck had the equitable title to the land
in suit when he made a deed thereto on April 20, 1899,
(in which his daughter, defendant Irma Juden, did not
join), and the decree should have been in their favor,
because his conveyance to Franklin carried this "equi-
table title;" third, if Houck had no estate in the lands
conveyed to his daughter, then the failure to include
them in the deed wherein she joined conveying other
lands, was such a mistake as equity will correct by re-
forming the deed.

Summarizing these points. (1) Were the Houck
patents invalid, and can that question be determined
in this action? (2) Did Houck retain the equitable ti-
tle to the lands after the deed to his daughter? (3)
Were the lands left out of the quitclaim to appellants'
grantor in which the daughter joined by mutual mis-
take on her part and on the part of the grantee? It
will clarify the case to discuss the last two proposi-
tions first. Taking these in order.

When Houck made a warranty deed to the land in
suit to his daughter on June 28, 1898, and recorded
the same, and she on the same day, as owner, executed
a trust deed on the lands to secure her
note, then the delivery and acceptance
of the deed in question were complete,
and whatever title Houck had to the
land described therein passed to his
daughter, and as she did not pay the recited considera-
tion, the transaction was an executed gift or an ad-
vancement determinable by the intention of the parties
and the attending facts and circumstances. To alter
this state of affairs, it was indispensable that appel-
lants should have adduced evidence clear, cogent, and
convincing, that the deed was not what it purported
to be, but simply evidenced a trust of the property in

*Warranty Deed: When Creation of Equitable Estate in Grantor.*

Houck's favor as beneficiary, and in a manner not repugnant to the Statute of Frauds. So far from producing the *quantum* of proof prescribed in such case, appellants furnished no substantial evidence of the existence of a trust resulting against the grantee, Irma Juden. All the circumstances relied upon to show such a trust were matters and things with which Irma Juden was not connected and which were not shown to have taken place with her knowledge and consent. She was not a party to the suit of the State against her father and Franklin, and hence, is not chargeable with any averments made in the answers to the defendants in the suit. She did not join in the quitclaim deed of her father which conveyed the land in suit, but only joined in another quitclaim which did not purport to convey the land in suit. She did not verbally or in writing communicate with Franklin, the grantee in the two quitclaims, and never was asked by him to make any sale of lands, although he admits he knew of the conveyance to her by her father. Under these circumstances and others in the record, we are unable to perceive any equitable reason, resting on any tangible or material evidence, for the theory, that, despite his aforesaid deed, Houck was thereafter the beneficial owner of the land in suit. The only basis for this motion seems to be inferences or deductions from his conduct and statements, without any proof of the cognizance and approval of his daughter. Unquestionably the contention of appellants, that Irma Juden would be bound by a ratification with knowledge of the facts of her father, is correct, but we are unable to find in this record any proof of such ratification on her part in the manner and to the degree required by law. We therefore hold that, regarding alone the deed from Houck to his daughter, no equitable estate remained in him after the making and delivery and acceptance of the deed, and hence, his quitclaim to appellant's ancestor did not divest the nonjoining owner, Irma Juden.

[Weiss v. Heitkamp, 127 Mo. l. c. 30; Derry v. Fielder, 216 Mo. l. c. 193.]

## II.

There is no evidence in this record that a mutual mistake on the part of Franklin and Mrs. Juden was made when the quitclaim she signed was prepared. It is impossible for a mistake to be made as to the land to be conveyed in any deed, unless the minds of the parties, or their authorized agents, had met previously to the conveyance on the subject of what lands were intended to be conveyed. The testimony of both Franklin and Mrs. Juden discloses that nothing took place between them as to the sale and purchase of any land whatever, except the physical act of Mrs. Juden in signing a quitclaim deed. Mr. Franklin not only knew Mrs. Juden owned the land in controversy, but he had possession of the deed of trust made thereon by her when it was cancelled, and he delivered it to her father, hence it cannot be that he was not chargeable with notice of her title when he afterwards set about acquiring that title or any part of the land. Before accepting her deed, he at least should have examined it to see whether it embraced the lands he desired to buy. The slightest attention to his own business would have dictated this course. It seems, however, that he simply assumed that he got her land because it was described in another quitclaim deed, made by Houck, which she did not sign. His credulity in this respect, does not constitute a legal basis upon which either he or his grantees can be permitted now to reform the deed which she did execute and as to which there is no evidence that it omitted any land which she had previously agreed to sell him. Moreover, while there is no evidence the scrivener made any mistake in writing the deed, yet even if he did, still there is no evidence

*Mutual Mistake: In Description of Land in Deed.*

that he was the joint agent of both parties, and Mrs. Juden would not be bound by his mistake unless he was her agent or unless there was other evidence of a mistake on her part, as to which there is no showing in the record. We conclude that there was no equitable ground for the correction of the quitclaim to Franklin which was signed by Irma Juden on the theory of a mutual mistake in omitting the description therein of the lands in suit. [Dougherty v. Dougherty, 204 Mo. l. c. 237; Benn v. Pritchett, 163 Mo. l. c. 571.]

## III.

The question decisive of this appeal is whether the Houck patents are void or voidable at the instance of appellants, for if they are, then appellants must have a decree for the lands in suit, since the legal conclusion that Irma Juden took no better title than her father is unavoidable upon the conceded facts showing voluntary character of conveyance to her. The decision of this question necessarily involves two inquiries; first, as to the legal effects of the method of conveying the lands adopted by the county court of Pemiscot when it patented them to Houck; second, as to the right of these appellants to rely upon the facts impeaching the patents to Houck as validating the later patents to their ancestor, by affording grounds to annul the previous ones.

Swamp Lands:
Voidable Patents:
No Consideration.

No dispute can exist as to the elements and true nature of the contract between Houck and the county court upon which its patents to him were based. The essence of the proposition was the purchase of the land for a nominally fixed sum by erecting an embankment on the side of a ditch running east and west through the county, and causing a railroad company to operate its trains on the tracks laid on this embankment, and

the payment of himself for these services, of the same sum of money for which he had given his note to the county as the purchase price of the lands. There would have been no legal objection to this transaction if the ditch so dug had been so located and of sufficient capacity that it could have been utilized to drain the lands and reclaim them from the overflows to which they were exposed, and if the cost of the ditch had been reasonable and not less than the minimum price fixed by the statute for the sale of such lands.

The testimony, however, was undisputed that the excavation work done by Houck and Franklin was not in any sense, either as to direction or capacity, capable of affording a drainage system adequate to carry off the periodical overflows to which the land in question was subject, but that it was only a succession of holes in the ground, made by throwing up earth to construct an embankment upon which the railroad track was laid; that it was entirely worthless for drainage purposes or the reclamation of the land. Under these facts the patents to Houck rested on no consideration, and the conveyance thereby, was a mere gift of the land in disregard of the duty of the county court to dispose of them for the purpose pointed out by the acts of the Legislature, which had vested the title to them in the county of Pemiscot. That the county court had no statutory right to do this is too clear for discussion. [R. S. 1909, secs. 7997, 8028; Simpson v. Stoddard County, 173 Mo. l. c. 452; Railroad v. Hatton, 102 Mo. l. c. 55; Bayless v. Gibbs, 251 Mo. 492, and cases cited.]

## IV.

But was its act a nullity or did it vest the legal title of the land in Houck subject to avoidance by suit in equity? The latter was the view taken by that tribunal since it ordered an equitable action to divest the title it had bestowed upon Houck, resting its equities

upon alleged matters *in pais*. Whether the theory of
the county court was correct or
whether the patent issued by it con-
veyed no title whatever, depends upon
the legal effects of the recitals in the
patent, or contained in other records
referred to in the patents; for if the contents of the
patent itself or of the other records specifically re-
ferred to therein, showed on the face of either that the
patent was issued in violation of the statutes of this
State, then the patent was simply void and passed no
title whatever to the patentee.

*Patents Regular on Face: No Actual Consideration: Voidable Only.*

It is not claimed by appellants that the efficacy of
this patent was destroyed as a conveyance, by mere le-
gal conclusion arising from its face; but they claim that
its illegality appeared upon inspection of other rec-
ords of the county court, which were pointed out by
the following language contained in the patents:
"Louis Houck has made full payment according to the
terms of the said sale made by the court by its proper
order entered of record on the 2nd of September, 1891,
for the land" (describing same). This language re-
ferred explicitly to the order of the county court of
Pemiscot county which contained the terms and stipu-
lations of the offer made by Houck to buy the land
and its acceptance by the county court, and also re-
ferred implicitly, to the order of the county court set-
ting out its contract with Houck for the canal work
and the procurement of a railroad to be operated on
its side. Giving these two orders the widest scope and
the fullest significance, it will be seen, that no legal in-
tendment can be drawn from them which of itself an-
nulled the patent.

In substance, the relevant entries of the county
court are, first, the offer of purchase of the lands and
its acceptance; second, the contract between Houck and
the county court for the reclamation work. These two
agreements taken together merely disclose a sale of the

land for the same price which was to be received by
the buyer for the ditching work. Standing alone, these
entries do not imply any violation of the statute, for
the price proposed to be paid for the purchase of the
land did not fall below the statutory limit of $1.25 per
acre (for which the county had a legal right to sell
them) and the description of the ditch did not show
that it was not in reality to be dug so as to drain the
swamp lands. It was only by evidence *aliunde,* that
it was made to appear that the work done under this
contract was not reclamation work at all, but consisted
simply of borrow pits or holes in the ground left along
the railroad embankment which were caused by the use
of the earth to form a railroad bed, and that they did
not serve any of the purposes of a drainage canal or
ditch by relieving the lands of overflowing water, and,
hence, were not a fulfillment of the contract of Houck's
to construct a drainage canal for the relief of said
lands. The evidence establishing this, though conclu-
sive, was entirely oral, and except for its production,
the veneer of legality given to the contract by the
use of the words employed therein, would not have
been shown to be a mere gloss put upon the agreement
in order to cover the real objects of the parties and in-
tended to give to the face of their contract an exterior
appearance of conformity to the statutes governing the
sale of this land. What Houck agreed to do was not
illegal in terms; what he in fact did, was the substitu-
tion (with the connivance of the county court) of fraud
for faith in the performance of the agreement. But
this was only developed by extrinsic oral evidence, and
did not appear from either of the entries spread on
the records of the county court which were referred to
in the patents to Houck. It necessarily follows that the
patent was not void on its face, nor rendered so by
mere reference to other entries. This patent was ex-
pressed in apt words to carry the title, it was issued
by the holder of the title to the lands invested by law

with power to sell them in the way that other lands of the county could be sold though at not less than a fixed price, as to the application of which a trust was saddled upon the vendor, but not upon the patentee. [Simpson v. Stoddard County, 173 Mo., supra.] And being neither void in terms nor by reference to other records, the conclusion is unavoidable, that it transferred the legal title of the county to the lands described, leaving with it the right (cognizable in equity only) to rescind the conveyance and recover the title for fraudulent failure of the consideration of its procurement, by proper action against the patentee and all others claiming under him who were not innocent purchasers for value without notice.

We accordingly rule that the position taken by appellant that the patents in question were void on their face or by reference to other writings, cannot be sustained. In this ruling we are considering the word "void" in the primary and correct sense of that term, which denotes an act which has no more legal effect than if it had never been performed, and which is therefore incapable of ratification or confirmation and is exposed to every form of attack, collateral as well as direct; and we have not used it to describe an act voidable only (such as the issuance of the patents to Houck) or one that is legally binding until set aside or annulled in the manner prescribed by law, and at the instance of competent parties, and which previous to avoidance, may be ratified or confirmed, and is not open to any collateral attack, but can be vacated only by a direct attack.

While it is true that the words "void" and "voidable" are sometimes interchangeably employed, this misuse has resulted from imperfection of language or lack of precision, distinction, and clearness of expression. [See cases cited in 40 Cyc. 215, note 61.] The essential difference between the meanings of the two terms has not been obliterated, and the true signifi-

cance to be given them is determinable by the legal character of the matters of which they are predicated. If these are of such a nature as to be without any legal efficiency as to any person or for any purpose, and this is apparent from their face or necessary notice of other matters expressly referred to, then they are void; otherwise, they can only be held voidable, however fraudulently or wrongfully brought about. If this differentiation is borne in mind it will be evident that some decisions, though rightly decided upon the facts in judgment, have inadvertently used void where only voidable was meant.

The obvious corollary of what has been ruled, is that the county of Pemiscot was entitled, by suit in equity, to annul the patents to Houck, not as being intrinsically void on its face or reference, but as having been wrongfully procured and unsupported by any consideration, and that it had the same remedy against any volunteer or other grantee from him who had notice of the infirmity of his title. This right accrued to the county by reason of the act of the county court in granting title without receiving the lawful consideration. This body being the mere agent of the county to make title to its land, and having violated that trust, the county became thereby empowered to annul the grant and recover the title to the land which its conveying agent had attempted to give away.

## V.

But the question still remains, are the appellants who have acquired (through Franklin) from the same body a second conveyance of the same land, entitled also to the same remedy the county had before dismissing the suit brought by it to enforce its equities? In considering this question it is well to bear in mind that appellants have no higher rights than belonged to Franklin when he acquired a

**Voidable Patents: Purchaser With Notice and His Grantees.**

patent from the county court in 1898, amended in 1908. At that time the previous patents, original and amendatory, granted to Houck in 1891, had been of record since the date of its issuance in the county court of Pemiscot county and in the office of the recorder of deeds for that county, and Franklin had been for many years a subvendee of Houck, at first of an undivided half interest, and afterwards in severalty of one-half of all the lands granted; that Franklin furnished the money, and he and Houck were paid by the railroad for their joint work in constructing the embankment from Kennett in Dunklin county to Caruthersville in Pemiscot county; that Franklin had actual knowledge of the incidental ditching resulting from the throwing up of an embankment for the railroad; that Franklin and Houck were the defendants in the suit brought by the county to vacate its patents to Houck in July, 1898; that to stop that proceeding Franklin, after procuring quitclaim deed from his codefendant Houck and another from Irma Juden which did not embrace the land in suit, made a compromise agreement with the county court whereby they issued to him the patents (under which appellants claim) to the lands in suit and other lands. Conceding that the record in this case established that the consideration which Houck had agreed to give for the patents issued to him, totally failed, and therefore the county was entitled to a decree divesting the title out of him for fraudulent procurement, yet we can perceive no legal ground whereon a subsequent purchaser, such as Franklin, from the county court, would be entitled to the same redress; certainly not since statutes of the 13th and 27th Elizabeth and their amendments, were enacted in this State. [R. S. 1909, sec. 2881-2.]

While an action to avoid the Houck patent for reason already stated inhered in Pemiscot county because it was a statutory trustee at the date of its patents, no such right could be acquired by a subsequent pur-

chaser from the county, except upon showing that the patents were designed specifically to defraud such purchasers, and that this intent was shared both by the county court and Houck, the grantee in the patent. The law on this subject in this State is firmly settled. [Bonney v. Taylor, 90 Mo. 63; Evans v. David, 98 Mo. 405; Reynolds v. Faust, 179 Mo. 21; Davidson v. Dockery, 179 Mo. l. c. 697; Seilert v. McAnally, 223 Mo. l. c. 516.]

The section of the statute referable to the effect of a fraudulent conveyance upon subsequent purchasers is, to wit:

"No such conveyance or charge shall be deemed void, in favor of a subsequent purchaser, if the deed or conveyance shall have been duly acknowledged or proved and recorded, or the purchaser have actual notice thereof at the time of the payment of the purchase money, unless it shall appear that the grantee in such conveyance, or person to be benefited by such charge, was party or privy to the fraud intended." [R. S. 1909, sec. 2882.] It is clear from this language that a second purchaser from a grantor, who has made a prior fraudulent conveyance, is debarred from any attack on the former deed if it is on record when he bought and paid for the land or if he then knew of its existence, unless he can prove that the original deed was made to defraud him. It will not be sufficient for him to show that it was voluntary or prejudicial to the rights of other persons. This is the explicit doctrine contained in the foregoing decisions. Applying the statute as thus construed to the facts in this record, it will be seen that Franklin could not have instituted in his own behalf the present action to declare void the patent to Houck. In the first place he knew that those patents had been made and recorded in the fall of 1904; for on the face of them he then purchased the undivided half interest and became a joint beneficiary of the conveyance made to Houck. Again, he was only

jointly interested in the financing and constructing of
the railroad, and was aware of the failure of Houck
and himself to construct the canal or drainage ditch,
and with knowledge of these facts, when he and Houck
were jointly sued by the county, he sought and ob-
tained a new conveyance to himself from the county,
and with full knowledge of the whole transaction evi-
denced by the patents issued to Houck.  In the second
place it cannot be conceived that the patent was
granted by the county to Houck with the intention on
their part to defraud Franklin, for at that time he
seems not to have been known to either of them, and
he subsequently became by monetary assistance and
joint work a joint beneficiary of the title conveyed in
said patent.  In this state of the record it would be
absurd to say that Franklin was intended to be de-
frauded by that instrument.  Nor does the fact that a
trust was imposed upon the county, as to the disposition
of the proceeds of the sale of its overflowed lands,
alter the statutory preclusion of a subsequent pur-
chaser from it, which would subsist in the case of an
ordinary or private person.  The county was pos-
sessed of the right to convey the entire title, legal and
equitable, to the land in dispute, it had the same power
in that respect which it had in other lands owned by it.
[R. S. 1909, sec. 8028.]   The only restriction imposed
upon it being that the price should not be less than $1.25
per acre.  [R. S. 1909, sec. 7997.]   As to the applica-
tion of such proceeds of the sale a trust was confided
in the county by the general laws of the State, but no
trust was imposed upon the purchasers to see to the
disposition  of  the  purchase money.  [Simpson v.
Stoddard County, 173 Mo. 1. c. 452.]   It is evident that
these circumstances did not prevent the conveyances
made by the county being fully subject to the statutory
rule announced in the section quoted above, and that
they afforded no ground for redress to a subsequent
purchaser to the county, which could not be had by a

second purchaser from any other vendor.  This section of the statute is so complete a bar to the maintenance of this action by appellants in right of their grantor Franklin, that it may not be amiss to refer to the cases wherein it has been applied.  In the case of Bonney v. Taylor, 90 Mo. 63, the above statute was held to justify an action of ejectment, brought by a voluntary grantee of land, which was subsequently conveyed by his grantor to the defendant who was purchaser for value, the point in the decision being that the statute above quoted permits a mere donee of land whose deed was on record at the time of the second sale, to recover the land from the subsequent purchaser for value to whom it had been delivered at the time of the sale.  The court held that it was wholly immaterial that the conveyance to the plaintiff was voluntary and fraudulent as to other persons, since the record failed to show that it was fraudulently made against the subsequent purchaser for value.  In enforcing the statute in that case, the court called attention to the seeming hardship of the case to permit the prior donee of the land to recover it against the subsequent purchaser for value, but held that the statute validating such a conveyance, when duly recorded, as against any subsequent purchaser not specifically designed to be defrauded by the parties, was controlling and necessitated the affirmance of the judgment, adding on that point:  "But considerations like these cannot prevail against the mandates of the law, and we only mention them to show the reluctance with which we affirm the judgment."  This case was affirmed in Evans v. David, 98 Mo. 405, where the plaintiff, who was the fraudulent grantee, brought an action of ejectment against a subsequent purchaser, and had judgment from which defendant appealed.  In affirming that judgment this court said:  "He is a subsequent purchaser . . . and in order that the plea may avail the defendant anything under the statute of fraudulent conveyances in

this case, it must be shown that such deed was made to defraud purchasers, and that Evans was a party or privy to that fraud.'' [African Baptist Church v. Transfer Co., 98 Mo. 412.]

The statute in question was next considered in this court in Reynolds v. Faust, 179 Mo. l. c. 26. In that case the court quoted from and affirmed the two preceding cases and decided a subsequent purchaser for value could not set aside a fraudulent deed previously executed by his grantor on the same land since it was duly recorded at the time of his purchase, and there was no proof of any intention thereby to defraud him. The action was one to set aside the deed of trust and cancel it as a cloud on the title of the plaintiff (a similar action to the one at bar). A demurrer was sustained and affirmed on appeal after an extensive review of all the cases.

In the case of Davidson v. Dockery, 179 Mo. 687, in disposing of a similar attempt of a subsequent purchaser to set aside a deed as a cloud on his title, the court said, when dealing with that particular point: ''It is well settled that a subsequent purchaser cannot attack a prior conveyance on the ground that it was made with the intent to hinder, delay and defraud creditors, but that 'a subsequent purchaser can only defeat a deed for fraud by showing that the fraudulent design was entertained towards him.' ''

The same statute was considered in the recent case of Seilert v. McAnally, 223 Mo. 505. In that case the above statute was quoted and also a section of the statute requiring instruments affecting real estate to be recorded. The court in vigorous terms enforced the mandate of the two statutes, and held that a subsequent purchaser could not, as such, obtain any relief against a prior deed duly recorded which might be voidable as to a creditor or other person, but which there was no evidence to show was intended by the par-

ties thereto to defraud the subsequent purchaser, and cited and approved Davidson v. Dockery, 179 Mo. l. c. 697.

It is clear that the authorities touching the application of the statute in question have hinged the right of a subsequent purchaser to recover property previously conveyed by his grantor for fraudulent purposes when such deed was on record, or such purchaser had notice thereof when he paid the money, solely upon the fact of proof being made that the prior deed was intended to defraud the subsequent purchaser and not other persons or creditors. Under the facts in this record the appellants' grantor does not fall within the exception of the statute, he is therefore without any remedy against the patents to Houck and could not transmit any remedy to the appellants who acquired only his title.

## VI.

As the conclusion thus reached presents an insurmountable legal obstacle to the recovery of the appellants in this action, it is unnecessary to discuss the theory of the learned circuit judge, that plaintiff's ancestor by the obtention of his patent from the county court of Pemiscot county acquired only a nontransmissible action for fraud.

[Weissenfels v. Cable, 208 Mo. 515.]

It is insisted by appellants that some authority for the maintenance of this action is to be found in Moss v. Kauffman, 131 Mo. 424. An examination of that case discloses that it was an action of ejectment wherein the plaintiffs claimed from a deed dated May 13, 1887, executed by Bollinger county; **Other Cases.** that the defendant claimed title under a deed from the same county dated in 1870; that when the earlier deed was shown in defence of the action it appeared from the face of the instrument that it

was void in the primary and true sense of the term, as to which the court used this language: "It was, therefore, void and of no effect, and all persons purchasing under it were bound to take notice of its infirmities. No extrinsic evidence was necessary to show its invalidity which appeared from its recitals." It is evident that the case presents no support for the present action. For the earlier patents in this record were not nullities on their face, but were simply voidable as has been shown, while in the case cited the patent was a void instrument in the correct sense of the term. Hence, the ruling in the case referred to does not in any way contradict the doctrine herein announced.

Appellants also cite the case Wheeler v. Reynolds Land Co., 193 Mo. 279. In that case, which was an action to quiet title, the patent upon which the plaintiff relied was held to afford no right of action against the earlier grant inasmuch as the proof offered by defendant (while the plaintiff was introducing his evidence) disclosed that it rested on no consideration, and that the senior patent had been duly recorded before the later one was issued. The court held that it was unnecessary to discuss the first patent since the plaintiff had shown no right to recover under the second. That ruling was not incorrect, but it was put upon an untenable ground. The plaintiff being a subsequent purchaser and the evidence having brought him within the purview of the statute above quoted, the ruling should have been rested on the statute. The case cites no authority for some of its observations which were unnecessary to the decision of the point in judgment. The formulation of its logical basis is a *petitio principii*, for the learned opinion speaks of a subsequent purchaser as the holder of a "valid title," and thus assumed the very point to be decided, and which could only be correctly determined by a consideration of

whether it fell within the terms of the statute relating to the infirmity of deeds given to subsequent purchasers who took them after due record or knowledge of a previous fraudulent deed not designed to defraud subsequent purchasers.

The opinion also referred to an action to quiet title as being a form of direct attack, whereas, in another opinion handed down on the same day and concurred in by the writer of the former, it was announced that where a patent was not void on its face or void by references therein to other instruments, it could only be set aside upon a direct attack, and that an action to quiet title did not perform that office. [Frank v. Goddin, 193 Mo. 390.]

The conclusion reached above disposes of the material points presented in the brief and argument of the learned counsel for appellant, and necessitates the affirmance of the judgment of the trial court. It may be noted, however, that appellants were not without remedy, for it is frankly stated by them that they held under a warranty deed from a solvent grantor and that the reason they brought the present action was that they desired to recover the lands in specie because of their enhanced value. Neither is their grantor Franklin in a position to lose his overpayment, for the record shows that defendant Houck offered to repay him any sum which had been overpaid by him in the purchase of the land. It is therefore apparent that the application of the law to this case has not worked any hardship or damage which Franklin could not have avoided if he had exercised ordinary business prudence in examining the quitclaim deed made to him by defendant Irma Juden.

The judgment of the circuit court is correct and is affirmed. *Lamm* and *Graves, JJ.,* concur; *Woodson, P. J.,* expresses his views in separate opinion.

## SEPARATE OPINION.

WOODSON, P. J.—I neither concur nor dissent to the opinion of my learned associate, written in this case, for the reason that I am firmly and unalterably of the opinion that the conveyance of the great body of land mentioned in the evidence, by the county of Pemiscot, to the owners and constructors of the railroad, for building their own road, was a gigantic fraud, both in law and fact, upon the public schools of that county; and I am not going to lend my concurrence to any opinion which may directly or remotely confirm that fraud.

However, this court has repeatedly approached that offensive question, because of innocent purchasers, under the erroneous ruling in the Simpson case, which is proper, with felt slippers and bated breath; but in the case at bar, if I correctly understand the record, this is a scramble between the joint malfeasors, or their grantees with notice, who, by said conveyances, defrauded the county and the schools thereof out of this valuable donation made thereto by the United States, by the Act of Congress mentioned.