BYRD v. HALL et al.

(District Court, E. D. Missouri, S. E. D.   September 15, 1913.)

No. 57.

1. JUDGMENT (§ 743*)—CONCLUSIVENESS—MATTERS CONCLUDED.

In a suit by creditors to set aside an alleged fraudulent conveyance, a judgment was rendered for plaintiffs setting aside the conveyance and a motion for a new trial made, which was not acted upon for a number of years. After the judgment the grantor's administrator presented his petition to the probate court, referring to the judgment, setting out the names of the judgment creditors who procured it, and praying for an order for the sale of the land conveyed, and the application of the proceeds, after the payment of costs, to the claims of such judgment creditors allowed by that court, and a sale was had. On a trial, after the granting of such motion for a new trial, the proceedings in the probate court leading up to the administrator's deed and the deed itself were received in evidence over the objection of the grantee's heirs that the administrator could not question the acts of his decedent, but was bound by his deed; that if the deed was fraudulent, the administrator had no authority to treat the land as a part of the estate; that the purchaser was one of the plaintiffs in the suit, and bought subject to the results of the litigation; that the judgment was set aside on a motion filed at the term at which it was rendered; that the purchaser bought the land while the motion for a new trial was pending; and that the petition to the probate court failed to confer authority on that court, and showed want of jurisdiction on its face. On appeal to the Supreme Court of the state judgment was rendered for plaintiffs, and the grantee's heirs moved to modify the judgment so as to allow them to pay the debts due plaintiffs and issue an execution for the sale of so much of the lands as would be necessary to pay off and discharge plaintiffs' judgments, only in case defendants failed to pay such judgments, and alleged in their motion that the deed was valid between the parties and binding upon the administrator, and could not be called in question by him though fraudulent, which motion was denied. *Held* that the judgment in that action was conclusive against the right of the grantee's heirs to maintain ejectment against the purchaser at the administrator's sale, on the ground that the land was not assets of the estate, and that the administrator could not pass title thereto though authorized by the probate court; that question having been involved in the former suit.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1252, 1253, 1275–1277, 1284; Dec. Dig. § 743.*]

2. JUDGMENT (§ 828*)—UNITED STATES COURTS—AUTHORITY OF DECISIONS OF STATE COURTS.

The decision of the Supreme Court of a state as to the validity of an administrator's deed was binding on the United States courts, as they possess no revisory powers over the decisions of the state Supreme Court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. § 828.*]

3. ESTOPPEL (§ 92*)—GROUNDS OF ESTOPPEL—ACCEPTANCE OF BENEFITS.

After a judgment in a suit by judgment creditors to set aside an alleged fraudulent conveyance which set aside such conveyance except as to 2,000 acres of the land conveyed, the grantor's administrator obtained authority from the probate court to sell the land as to which the conveyance was set aside and apply the proceeds to the payment of such plaintiffs' judgments against the grantor. The 2,000 acres excepted by the judgment were sold, and the proceeds appropriated by the heirs of the grantee. *Held*, that by thus accepting the terms of the decree, such heirs

were estopped to attack the validity of the title under the administrator's deed, on the ground that the land fraudulently conveyed was not assets of the grantor's estate, and could not be sold by the administrator, though authorized by the probate court.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 260–263; Dec. Dig. § 92.*]

4. ADVERSE POSSESSION (§ 13*)—ELEMENTS.

Where, in ejectment, it appeared that defendant and those under whom it claimed had been in possession of the lands in question, claiming title thereto, for more than 10 years next before the commencement of the suit, it was entitled to judgment.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 65, 67–76; Dec. Dig. § 13.*]

At Law. Ejectment by Abraham R. Byrd against George Allen Hall and another. Judgment for defendants.

See, also, 196 Fed. 762, 117 C. C. A. 568.

R. B. Oliver, of Cape Girardeau, Mo., and Wilson Cramer, of Jackson, Mo., for plaintiff.

Martin L. Clardy, of St. Louis, Mo., R. A. Anthony, of Fredericktown, Mo., J. T. McKay, of Kennett, Mo., and Charles W. Bates, of St. Louis, Mo., for defendants.

DYER, District Judge. Litigation touching the lands in controversy in this case has extended over a period of more than 35 years. It began in the circuit and probate courts of Dunklin county, and by changes of venue and otherwise was considered by the circuit courts of Howell and Jefferson counties, and from thence by the Supreme Court of Missouri.

The history of the contest is an interesting one, and is well stated by the Supreme Court in the case of St. Francis Mill Co. et al. v. Sugg et al., 206 Mo. 148, 104 S. W. 45.

In 1910 the plaintiff, who claims title under and from the heirs of Wiley P. Sugg, instituted in this court the present action. The case was tried here in 1911, and resulted in a judgment for the defendants. From this judgment the case was taken to the Circuit Court of Appeals for the Eighth Circuit. That court reversed the judgment of this court and remanded the case, with directions to grant a new trial. Byrd v. Hall, 196 Fed. 762, 117 C. C. A. 568. After the mandate of the Court of Appeals, setting aside the former judgment of this court and ordering a new trial, was received and duly entered, the defendants asked and obtained leave to file, and did file, an amended answer, to which the plaintiff filed a reply. The petition, the amended answer thereto, and the reply made the issues upon which the evidence now in the record was introduced.

The plaintiff insisted and now insists that with the exception of certain pleas touching the 24 and 30 year statute of limitations, there are no changes either in the pleadings or the evidence from those contained in the former transcript of this court, and upon which the Court of Appeals passed. For that reason the plaintiff contends that these questions were all adjudicated and finally settled by the judgment of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Court of Appeals, and that therefore the parties hereto are concluded from any further consideration of the questions involved. If this contention is true, then it becomes the plain duty of this court to find the issues, upon this branch of the case, in favor of the plaintiff and enter a judgment accordingly. With this contention of the plaintiff, however, the court does not agree.

The question that the Court of Appeals decided, as this court understands the decision, was that land conveyed in fraud of creditors did not, upon the death of the fraudulent grantor, become *general assets* of his estate, and that any sale of such lands by the administrator was ineffective to pass the title, notwithstanding an order of the probate court of Dunklin county directing the sale. This decision, of course, was made upon the facts as then disclosed in the record before the court.

The amended answer of the defendants and the evidence given in support thereof are essentially different from those appearing in the former record.

[1] The facts as now pleaded and shown by the evidence in the case to be true are to the effect that prior to the death of William S. Sugg, in 1873, certain of his creditors, to wit, St. Francis Mill Co., Crow, McCrerry & Co., Sanford, Wells & Co., Moody Michel & Co., Miller, Rehm & Co., Hickman & Sipple, J. Weil & Co., Snody & Parish, Jones, Tapp & Co., and Bamberger-Bloom & Co., sued and obtained large judgments against him in the circuit court of Dunklin county; that after these judgments were obtained William S. Sugg died, and B. T. Walker (his brother-in-law) was appointed by the probate court of Dunklin county administrator of the estate of the deceased. The said several judgments were duly presented to the probate court for allowance against Sugg's estate, and were duly allowed and classified under the law as of the fourth class. William S. Sugg in his lifetime, to wit, on the 24th day of May, 1871, conveyed by general warranty deed the lands now in controversy (and many more) to his brother, Wiley P. Sugg. After the above-mentioned creditors had sued and obtained judgments against William S. Sugg, as before mentioned, and after the death of William S. Sugg in 1873, the said judgment creditors began a suit by filing a bill in equity in the circuit court of Dunklin county against Wiley P. Sugg to set aside a deed from William S. Sugg to him (dated May 24, 1871), on the ground of fraud. This suit was instituted in the year 1875. In 1876 Wiley P. Sugg, the defendant in that suit, died intestate. The suit was thereafter revived against the widow and children of Wiley P. Sugg. This suit finally resulted in the judgment of August 20, 1880, setting aside the deed of William S. to Wiley P. Sugg, except as to about 2,000 acres. After the rendition of this judgment, to wit, on the 13th day of December, 1880, Benjamin T. Walker, administrator of the estate of William S. Sugg, presented his petition to the probate court of Dunklin county, in which he referred to the decree of August 20, 1880, and set out the names of the judgment creditors who had procured the same, and prayed the court for an order of sale. The concluding portion of this prayer is as follows:

"And your petitioner further prays for an order authorizing and directing him to pay out of the proceeds of the sale of this land: First, the costs incurred by plaintiffs in procuring decree in circuit court, and to be allowed by you in your court; second, the costs of sale, and costs incurred in this court and to be allowed by you; third, a pro rata payment of the remainder of the cash on hand at time of sale, to be paid to plaintiffs in the aforementioned cause who have their claims allowed according to law in your court."

This petition was not in the evidence before this court at the former trial, and consequently not before the Court of Appeals, but is now for the first time brought to the attention of the court. It was, however, before the Supreme Court, as is shown by the record of that court now in evidence.

The prayer of the petition was granted, and the sale made in accordance with the laws of Missouri. At the sale, George Rogers, under whom the defendants claim title, became the purchaser, and a deed of the administrator to him, containing the statutory recitals, was made, delivered, and recorded. The proceedings of the probate court leading up to this deed and the deed itself were offered and received in evidence by the circuit court of Jefferson county, against the objections made at the time by the heirs of Wiley P. Sugg, who were then, as now, represented by the same distinguished counsel. The objection to the introduction of the deed to Rogers is important, as the court believes, as showing that the heirs of Wiley P. Sugg were then making the same claim to the lands uncovered by the decree of August 20, 1880, as they now and here assert.

The objections so made now appear *for the first time* in this case, and are as follows:

"We object for the reason that B. T. Walker, in the first place, as administrator of the estate of William S. Sugg, had no right, as administrator, to call into question the acts of his decedent; he was bound by the deed from W. S. Sugg to W. P. Sugg; in other words, if that deed was made fraudulently, he was bound by it. B. T. Walker, as administrator of W. S. Sugg, was bound by that deed, and had no authority, under the law, to treat that land as a part of the estate of W. S. Sugg.

"We object, further, because the alleged purchaser, at the sale of B. T. Walker, was one of the plaintiffs in this suit, the original plaintiff in the original petition; and, if he bought it at the sale of B. T. Walker, he bought it subject to the results of that litigation.

"We object to these deeds for the reason that the decree which undertook to set aside the deed from W. S. Sugg to W. P. Sugg and invest the title in W. S. Sugg was set aside by the order of the circuit court of Dunklin county upon a motion filed at the same term of court, at which the decree was rendered.

"We object, further, because it is shown that the purchaser, George Rogers, bought this land during the time the motion for a new trial was pending, which was filed to set aside the decree of August 20, 1880, by which the circuit court of Dunklin county undertook to set aside the deed from W. S. Sugg to W. P. Sugg.

"We object, further, for the reason that the petition was presented to the probate court for the sale of W. S. Sugg lands absolutely failed to confer any authority upon the probate court. The petition shows on its face the want of jurisdiction."

Supreme Court Transcript, pp. 895, 896.

These objections were before the Supreme Court of Missouri for consideration in the transcript from the Jefferson county circuit court.

They were necessarily considered by the Supreme Court and determined by its judgment.

The decision of the Supreme Court and the extent and scope of its decision in the case of St. Francis Mill Co. et al. v. Sugg et al., 206 Mo. 148, 104 S. W. 45, seems to have been well understood by the distinguished and learned counsel, then and now representing the heirs of Wiley. P. Sugg. Fully understanding as they did the effect of that decision upon their clients, they sought by motion to obtain a rehearing, and failing in that, to have the court modify its judgment. That motion is as follows:

"If this court is unwilling to recall the majority opinion in this cause and refuses a rehearing, respondents respectfully ask the court to modify said opinion and its judgment so as to afford respondents an opportunity to pay off and discharge whatever sums of money may be due the appellants on their several judgments. That is to say, make an order directing the court to enter up a decree in which it shall ascertain and define the amounts due the several appellants on their several judgments, and then order and adjudge that, upon payment by the respondent of said judgments, with interest, the deed from William S. Sugg to Wiley P. Sugg shall be valid and binding, and that a day certain in the future be named in which respondents shall be permitted to make such payments, but that if the respondents fail, by the day named, to pay off and discharge such judgments and costs, then a special execution issue, directed to the sheriff of Dunklin county, authorizing and directing him to sell so much of said lands as will be necessary to pay off and discharge such judgments and costs, and that any balance of said lands, not required to be sold for the purpose aforesaid, be adjudged and decreed to have passed by said deed from William S. Sugg to said Wiley P. Sugg.

"However fraudulent the deed from W. S. Sugg to Wiley P. Sugg may have been, if found to have been fraudulent, it is valid as between the parties, and vested title in Wiley P. Sugg, and from him it has passed by descent to these respondents. None but judgment creditors could complain.

"This deed was equally binding upon the administrator of the estate of W. S. Sugg, deceased, and cannot be called in question by him, though fraudulent."

The Supreme Court denied the motion, although it raised practically the same questions as are here insisted upon. That motion was not before this court at the former trial, and consequently not before the Court of Appeals.

[2] Whether the Supreme Court was right or wrong in its judgment is not for this court to determine. It is the court of last resort in the state, and its decisions upon matters of local concern are binding upon this court.

This court as the Supreme Court of the United States has decided—

"possesses no revisory power over the decisions of the Supreme Court of the state, and any argument to show that that court mistook the law and misjudged the jurisdictional fact would have been out of place. There were no facts before the Circuit Court (U. S. Circuit) which were not before the Supreme Court of the state when its judgment was pronounced." Galpin v. Page, 18 Wall. 365, 21 L. Ed. 959.

[3] The question of title to the lands in dispute was before the courts of Missouri for 30 odd years. The decree of the Dunklin county circuit court (August 20, 1880) excepted 2,000 acres of land, conveyed by the deed of William S. to Wiley P. Sugg. These lands were accepted and sold by the heirs of Wiley P. Sugg, and the proceeds thereof ap-

propriated to their own use. They accepted the terms of that decree, and should be bound by it. The lands now in dispute are a part of the same lot, and were sold after that decree by the administrator of W. S. Sugg to Rogers for the purpose of paying judgment debts—debts that formed the basis for the decree.

These facts were all before the Supreme Court of the state when its decision was rendered in 1897. Many and very important of these facts have never been before the court until now.

The Supreme Court, speaking of the decree of August 20, 1880, said:

"These plaintiffs were there at that time of full age, and represented by counsel. They permitted the decree to be thus entered. By their agreement it was thus entered. Under the record in this case the heirs of W. P. Sugg have sold at least 700 acres of this exempted land. Other portions may have been sold and passed into the hands of innocent persons upon the faith of this decree entered by the consent and agreement of these plaintiffs. If the defendants have sold this 2,000 acres, they are estopped, and by the actions of the plaintiffs in agreeing to this decree they should not be permitted to reap the benefits, especially as against innocent purchasers if such there be, and 700 acres at least have been sold. To give plaintiffs this 2,000 acres would be inequitable. To disturb these titles at this date would work a hardship. The other titles under this same decree of 1880 have passed as if no deed had been made. For the reasons heretofore given this case should 'be and is reversed, but, it being one in equity, we will direct a judgment in conformity with our views of the equities of the case, and one which will in no wise disturb the titles. We have the whole case before us," etc.

The *complete* record of the Supreme Court in that case is now for the first time before this court. It is replete with all of the proceedings of the probate court of Dunklin county touching the lands in dispute—the proceedings of the circuit court of that county touching the same lands; the complete proceedings in the circuit court of Jefferson county; the injunction proceedings by the plaintiffs against these defendants; the deed of Walker to Rogers; the opinion of the Supreme Court (206 Mo. 148, 104 S. W. 45); the motion of plaintiffs to modify the decree and the order denying the motion. The Supreme Court of Missouri seems to have settled this case against the plaintiffs.

Upon the pleadings as they *now* stand, and upon the evidence as it *now* appears, the court finds that the plaintiffs are not entitled to recover in this action. Various objections were made during the trial to the introduction of evidence. The court did not at the time rule upon the questions, but reserved the same until now. All such objections are now overruled and exceptions allowed.

[4] There are other questions raised by the pleadings and evidence in the case that it is probably my duty to consider and decide. The first of these is the statute of limitations—sometimes called a statute of repose. This section (section 6) was bought by George Rogers at the sale made by the administrator of William S. Sugg in January, 1882. In 1884 this land was assessed to Rogers, and from that time to the time of his death the taxes were annually paid by him. He died in 1895. His will, devising these lands to his wife, Sue B. M. Rogers, was dated March 15, 1895. The taxes for that year were paid by his executor. On the 16th of August, 1897, Sue B. M. Rogers sold and conveyed these lands to J. E. Thomas, who, on the 13th of September

of the same year, sold and conveyed the same lands to John W. Vail, J. E. Thomas, and John A. Cook, a copartnership. On the 15th of June, 1898, Vail, Thomas and Cook sold and conveyed these lands to the defendant herein, the Decatur Egg Case Company, a corporation. From that time until and after the institution of this suit in 1910 the defendants paid all taxes. In 1898 (after it purchased the land) the Decatur Egg Case Company built two houses upon the land. One of these burned, but the other was continuously occupied by the tenants of the defendants. In 1898 the plaintiffs undertook to assert ownership and possession by running a single wire around the section. They thus *fenced in* the tenants of defendant. This wire was immediately cut by the defendant, and it continued to occupy the land and to cut timber thereon. These, then, being the conditions, the plaintiffs in 1899 commenced an injunction suit in the Howell county circuit court to prevent the defendant from cutting the timber on the section. An injunction bond was required by the law to be given by the plaintiffs, and Byrd (the plaintiff here) was surety on the bond. The entire record in that case is now for the first time in evidence here. In the former trial the bond only was offered. An examination of the petition in that case, signed by the same attorney now representing the plaintiffs, shows that the plaintiffs set out with great particularity the claim made by the defendant to this land. The answer of the defendant set up ownership of the land in dispute.

In July, 1909, by agreement of counsel, the Howell circuit court entered a decree in favor of the defendant, dissolved the temporary injunction previously granted, and assessed damages in favor of the defendant for the sum of $500. In that suit the plaintiffs made the same claim to the land that they here make.

Considering all the evidence touching this particular defense, the court finds that the defendant, the Decatur Egg Case Company, and those under whom it claims, had been in possession of the lands in question, claiming title thereto, for more than 10 years next before the commencement of this suit, and for that reason the verdict should be and is in favor of the defendants.

Upon the whole case the court finds:

First. That the title to the lands in dispute has been adjudicated by the Supreme Court of Missouri adversely to the plaintiff, and those under whom he claims and that adjudication is binding upon this court.

Second. That the plaintiff by his action and the action of those under whom he claims title is estopped from now claiming title to the lands in dispute.

Third. That the statute of limitations, interposed as a defense in this case, is good and sufficient, and is sustained by the evidence in the case.

A judgment will be entered in favor of the defendants.