## SUGG et al. v. WISCONSIN LUMBER CO.

(District Court, E. D. Missouri, E. D. June 15, 1922.)

No. 5324.

1. **Public lands** ⟨⟩61(11)—**Deed to swamp lands, made pursuant to order of county court, held sufficient.**

Where by the statutes of a state the county court of a county was given full power and control of swamp lands therein, and authorized to sell and convey the same by a commissioner appointed by an order of the court, a conveyance executed by the president of the court, pursuant to an order made by the court, *held* valid, though he was not expressly named as commissioner.

2. **Public lands** ⟨⟩61(9)—**Junior grantee of swamp land may impeach prior conveyance as in violation of trust.**

Where, as under the statutes of Missouri, counties hold title to the swamp lands therein in trust for the benefit of their school fund, with authority to sell only for a valuable consideration, a junior grantee from a county for a valuable consideration may attack the validity of a prior conveyance by the county, on the ground that it was without consideration and in violation of the trust, at least where the claimants under the former conveyance are in privity with the original grantee.

3. **Counties** ⟨⟩81—**Persons dealing with officers must take notice of powers.**

Under the law of Missouri all persons dealing with statutory officers of a county must, when the powers and duties of those officers are prescribed by statutes, take notice of such statutes, and when a statute is not followed, but departed from, the acts of the officer are void as to the county.

4. **Courts** ⟨⟩367—**Federal courts not bound by state decisions made after accrual of rights of parties.**

Where rights of the parties accrued under a particular state of local decisions, which created a rule of property, a federal court is not bound by subsequent state decisions changing such rule.

In Equity. Suit by Clyde F. Sugg and others against the Wisconsin Lumber Company. Decree for defendant.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John T. McKay, of Kennett, Mo., for plaintiffs.

Victor A. Remy, of Chicago, Ill., Ward & Reeves, of Caruthersville, Mo., and Spencer & Donnell, of St. Louis, Mo., for defendant.

FARIS, District Judge. This is an action, brought originally in the circuit court of Dunklin county, Mo., by the heirs of Wylie P. Sugg, to determine title to the west half of section 10, in township 16 north, of range 10 east, situate in said Dunklin county, Mo. The action as originally brought was bottomed on section 2535 of the Revised Statutes of Missouri of 1909 (now section 1970 of R. S. of Mo. of 1919). In due course the action was removed by defendant to the Southeastern division of the Eastern district of Missouri, and thence, by stipulation of counsel, transferred to the Eastern division of the Eastern district of Missouri, wherein it was heard, argued, and submitted to the court on the merits.

When the case came into the federal court on removal, a motion was filed, and by the court sustained, to require plaintiffs to replead, so as to conform to the equity practice in cases to remove a cloud on title to land. Thereupon plaintiffs filed an amended petition, so conforming as to put the case on the equity side. Defendant answered fully, by raising many points and defenses, which will be referred to in due course, in so far as they are necessary to a decision of the case. By a crossbill, defendant asked as affirmative relief that the court remove an alleged cloud on its title to the lands described in the amended complaint.

The lands are what are called "swamp lands," and are part and parcel of that large domain granted to the state of Missouri, by the Act of September 28, 1850, of the Congress of the United States (9 Stat. 519 [Comp. St. §§ 4958–4960]). By the Act of March 3, 1851, of the Legislature of Missouri (Laws Mo. 1850–51, p. 238), these swamp lands were donated "to the counties in which they lie." This last act did not apply to Dunklin county, but by an act passed on the 23d day of February, 1853 (Laws Mo. 1852–53, p. 108), the provisions of the former act were made applicable to the swamp lands of Dunklin county, and this county thereafter by statutory grant held such lands (a) for the purpose of drainage and reclamation; and (b) for the use and benefit of the common school fund of the county wherein the lands lay, when the expenses of drainage and reclamation had been paid. Russ v. Sims, 261 Mo. loc. cit. 37, 38, 169 S. W. 69; Laws Mo. 1850–51, p. 238; Laws Mo. 1852–53, p. 108.

Neither plaintiffs nor defendant are in actual possession of any of these lands, for the lands are wild, untilled timber lands; but for some 20 years defendant has paid the taxes thereon, cut timber from these lands, maintained signs on the section corners indicative of and asserting its ownership, used them, till just before this action was begun, as a right of way for a logging railroad, and kept watchmen thereon to keep off trespassers. It is conceded, however, that no statute of limitations is involved upon these facts.

For the origin of this action we must go back more than half a century. In 1870, the county court of Dunklin county, Mo., made a contract with one Wm. S. Sugg "to open and make navigable, for boats 100 feet long and 20 feet wide, the Varner river from its head to its mouth

and the St. Francis river from the mouth of the Varner river to the southern line of the state of Missouri." In payment for this work, touching which, surprising as it may seem, no details or specifications other than as stated above were recited, Sugg was to have conveyed to him 40,000 acres of the swamp lands then owned by Dunklin county. In June, 1870, there were conveyed to William S. Sugg 20,000 acres of this land, by a patent executed by the president of the county court and attested by the county clerk. This patent refers, both in the body thereof and in the acknowledgment clause, to an order of the county court conferring authority on the president, or presiding judge, to execute it. An attack is made on its validity, which is reserved for discussion in its proper place.

On the 27th day of May, 1871, Wm. S. Sugg conveyed these lands to his brother, Wylie P. Sugg, and shortly thereafter died. The estate of Wm. S. Sugg was hopelessly insolvent, and in 1875, just prior to his death, an action was begun by divers of the creditors of William against Wylie P. Sugg to set aside as fraudulent the conveyance to the latter of these lands. A decree was rendered in 1880, finding and adjudging this conveyance to have been in fraud of the creditors of William, and this conveyance was set aside as to the lands in dispute here, and as to all of the lands, except 2,000 acres thereof (none of which latter are here involved, however). Subsequently, and in 1882, the remainder of the 20,000 acres theretofore conveyed to William by the county (including the lands here involved) were sold under an order of the probate court of Dunklin county, as the lands of William, for the purpose of paying his debts and the tract here involved was bought by one George Rogers, a creditor of Wm. S. Sugg. The validity of this sale is attacked in the instant action, and this point is reserved for discussion herein, if such discussion shall become necessary.

Fifteen years after the decree of 1880, which adjudged the conveyance from William to Wylie to have been in fraud of William's creditors, and in 1895, it was discovered that a motion for a new trial had been made, but not decided, in the case which so adjudged, and much litigation, both on the legal effect of this ancient motion and on the merits, thereafter ensued. This litigation was not finally settled till 1907, at which time the Supreme Court of Missouri affirmed in effect the decree of the circuit court of Dunklin county of 1880, which had held that the conveyance from William to Wylie was, as to creditors of William, fraudulent and void. St. Francis Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45.

Since the status first determined, in 1880, by the circuit court of Dunklin county, was finally adjudged to be the legally correct status, it is obvious that the legal history of the case, save and except, perhaps, the legality of the sale by the probate court, does not concern us here, except in so far as this intervening litigation may serve to throw light on the history of the case. The curious in this behalf may consult St. Francis Mill Co. v. Sugg, 83 Mo. 476; St. Francis Mill Co. v. Sugg, 142 Mo. 358, 44 S. W. 247; St. Francis Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45; Byrd v. Hall, 196 Fed. 762, 117 C. C. A. 568; Byrd v. Hall (D. C.) 211 Fed. 182; Byrd v. Hall, 227 Fed. 537, 142 C. C. A. 169. There are other cases, some of which were in this court, and are not re-

ported. One of these latter cases (Rogers v. Sugg) was brought in this court, and a decree by default was rendered therein, in favor of plaintiff and against defendants therein, who were the heirs at law of William S. Sugg.

The record in the latter case was offered on the trial of the instant case, and is relied on by defendant here to eke out the title asserted by it in its cross-bill; this for the reason that Rogers, who bought the lands here in dispute at the sale under the orders of the probate court, brought the action last mentioned to correct the patent from Dunklin county to William S. Sugg, averring under oath that this patent had been so altered as to read "range 10," instead of "range 7." The pertinency of this allegation is apparent. The original patent from Dunklin county to William was recorded in 1870. The land records of Dunklin county were destroyed by the burning of the courthouse of that county in 1872. Afterwards the patent to Wm. S. Sugg was again recorded, after the burning of the courthouse and the destruction of the original records, having, as Rogers averred and this court found, been in the meantime altered and forged, by changing "range 7" to "range 10."

On the trial of the case at bar, the original patent was not offered, but a certified copy thereof was used. What became of the original does not seem to be disclosed by the record. The action of Rogers v. Sugg, above referred to, was brought by Rogers against the heirs of Wm. S. Sugg, deceased, and not against the plaintiffs, who are the heirs of Wylie P. Sugg. So I do not understand that this latter decree is urged as binding on plaintiffs here as res adjudicata, but it is urged as estopping the heirs of Rogers (who are not in court, however) from claiming that title to this land ever passed from Dunklin county to Wm. S. Sugg, and that as to Rogers or his heirs, therefore, this title was in Dunklin county when defendant's mesne grantor bought it from the county of Dunklin, and got for it the patent which constitutes the basis of defendant's paper title. In passing, and merely as the history of the case, and as throwing some light on the good faith and truth of plaintiffs' claim, it may be said that the contract between Wm. S. Sugg and Dunklin county seems to have contemplated that the lands to be given to said Sugg for his work in rendering Varner and St. Francis rivers navigable were such lands as lay adjacent to the above rivers and other water courses named in the contract. If this construction be correct, it is a significant fact that none of the said water courses are nearer than 14 miles to the lands in controversy here, and some of them are more than 18 miles distant therefrom.

As already forecast, in 1899, one Virgil McKay bought the lands here in controversy from Dunklin county, Mo., and a patent was duly issued to him therefor. From said McKay, by and under mesne conveyances, defendant deraigns title. The validity of the patent to Wm. S. Sugg from Dunklin county is ably and strenuously attacked by defendant, for that, as defendant urges: (a) It was made by the president of the county court, instead of by a commissioner appointed by the court for that purpose; and (b) that it is invalid, because without consideration in fact or law, because it is bottomed on a contract solemnly found and adjudged by the Supreme Court of Missouri to have been no more than a "huge joke." It is, of course, obvious that, if either one of the

points urged by defendant be well taken, plaintiffs cannot recover. The points urged and both of them are, moreover, of pith and moment, so far as the title of defendant urged in its counterclaim is concerned.

Plaintiffs contend that the title taken by their ancestor, Wylie P. Sugg, by the conveyance to the latter from his brother William, the patentee, is valid as to all the world, except the creditors of William and those in privity with them, and except as to purchasers at a valid sale, validly ordered by the probate court. George Rogers was both a creditor of William and a purchaser at this sale. It is true that defendant does not hold title under Rogers, nor in privity with him. It does, in a sense, hold under him on the view (as to its counterclaim only) that it bought this land by warranty deed, from a patentee from Dunklin county, after Rogers had, with defendant's full knowledge, solemnly disclaimed that either he or Wm. S. Sugg had title from Dunklin county, because of the fraudulent alteration of the patent from the county to Wm. S. Sugg.

[1] When this land was conveyed to William S. Sugg in June, 1870, there was in force and effect, applicatory to these lands, this statute:

"Whenever, in the judgment of said county courts, it shall be the interest of said counties to do so, they shall order the sheriff to sell the same, at public vendue, to the highest bidder, after giving sixty days' notice, in such quantities, at such times and places and on such terms as they may think proper, with or without draining and reclaiming the same, as, in their discretion, they may think most conducive to the interests of their respective counties; and all sales made under the provisions of this act shall conform to the subdivisions prescribed by the laws of the United States; provided, however, that no land shall be sold, under the provisions of this act, for less than one dollar and twenty-five cents per acre, within five years from the first day of January, eighteen hundred and sixty-six." Laws Mo. 1868, p. 69, § 3.

The Supreme Court of Missouri has ruled, by a fairly consistent line of decisions, that the above statute applied to public sales only, and that the several county courts had the power to sell such lands at private sale, for a less sum in money than $1.25 per acre. Pool v. Brown, 98 Mo. 675, 11 S. W. 743; Linville v. Bohanan, 60 Mo. 554; Simpson v. Stoddard County, 173 Mo. 421, 73 S. W. 700. Even on this question the case of State ex rel. v. Crumb, 157 Mo. 545, 57 S. W. 1030, announces a contrary ruling. But I have found but one case (Brinkerhoff v. Juden, 255 Mo. 698, 164 S. W. 523) wherein, in effect, it seems to have been held that the county courts had the power to give these lands away, if, forsooth, they were able to cover up such gift by a false recital in the patent. Of this case something further will be said below.

Section 8 of the same act of 1868, touching the funds derived from the sale of swamp lands, provided that:

"The net proceeds of the sales of all such lands, after defraying the expenses of draining, reclaiming, surveying and selling the same as herein provided, shall be paid into the county treasury and become a part of the public school fund of the county."

The Act of March 10, 1869 (Laws Mo. 1869, p. 66), provided that:

"The several county courts shall have full power and control over all such overflowed and swamp lands * * * and to sell and dispose of the same in like manner and with like effect as now provided by the general statutes in relation to the conveyance of other real estate belonging to their respective counties."

With regard to the sale of "other real estate belonging to a county," the statute of 1865 provided that:

"The county court may, by order, appoint a commissioner to sell and dispose of any real estate belonging to their county." Gen. St. 1865, c. 109, § 4.

From this it is argued by defendant that in June, 1870, the county court of Dunklin county could not convey swamp lands by a deed made by the president of the court, attested by the clerk of the county court, as was the patent in question here.

I am of opinion that there is nothing in this contention. Since the passage of the statute of 1879 (R. S. 1879, § 6154), the power to make patents to swamp lands has been specifically vested in the county courts. Yet patents made by a commissioner have been repeatedly held valid even in the teeth of the statute of 1879. The converse surely ought to be true. If the county court could by an order appoint a commissioner to convey such lands, it certainly had the power to convey these lands by its presiding judge. The patent here recites that the president of the county court had been empowered by an order of said court to convey. So it makes no difference whether the president of such court shall be called or designated a commissioner or not; nevertheless by the terms of the order he became a person authorized by an order of the court to convey. The merely adventitious fact that the person or commissioner so ordered and empowered to convey happened for the nonce to be also the president of the county court can cut no figure in the case. The order of the county court made him a commissioner, even though he was not so designated.

Moreover, it would present an anomalous situation if it were to be held that the court, the principal, could appoint an agent to do a thing which the court itself could not do itself. Both directly (Russ v. Sims, 261 Mo. 37, 169 S. W. 69) and by analogy the point has been ruled against defendant; for there are numerous Missouri cases holding that, after the statute of 1879 became the law, a deed from a commissioner appointed by the county court to make a deed to swamp lands passed the county's title thereto, although the statute of 1879, referred to above, provided that patents to such lands should be executed by the president of the county court. On either and all of the above grounds this point urged by defendant is disallowed.

[2] The question whether a junior patentee (or his mesne grantee, as is defendant here) can attack for fraud in the consideration, and in effect set aside, a senior patent, and the title held thereunder by the heirs of the mesne grantee (as are the plaintiffs here), is and has been a much-mooted question in the Supreme Court of Missouri. The decisions of that court are utterly irreconcilable. It is impossible to follow them, because it is impossible to find any uniform and consistent lines of decisions running through them. One line of decisions is found in the cases of Andrew County v. Craig, 32 Mo. 531; Wolcott v. Lawrence County, 26 Mo. 275; State v. Bank, 45 Mo. 528; State ex rel. Robbins v. New Madrid County, 51 Mo. 83; Saline County v. Wilson, 61 Mo. 237; Sturgeon v. Hampton, 88 Mo. 203; Cape Girardeau, etc., Ry. v. Hatton, 102 Mo. 45, 14 S. W. 763; Butler v. Sullivan County, 108 Mo. 630, 18 S. W. 1142; Wm. Brown Estate v. Wayne County, 123 Mo.

464, 27 S. W. 322; Cape Girardeau, etc., Ry. v. Wayne County, 125 Mo. 351, 28 S. W. 494; Hooke v. Chitwood, 127 Mo. 372, 30 S. W. 167; Moss v. Kauffman, 131 Mo. 424, 33 S. W. 20; State ex rel. v. Crumb, 157 Mo. 545, 57 S. W. 1030; Wheeler v. Reynolds Land Co., 193 Mo. 279, 91 S. W. 1050; Bayless v. Gibbs, 251 Mo. 492, 158 S. W. 590. See, also, the case of Stone v. Perkins (C. C.) 85 Fed. 616.

The cases of Moss v. Kauffman, supra, and Wheeler v. Land Co., supra, are substantially typical of the other cases cited above. In the Moss Case, decided in the year 1895, it was said:

"Counties to which swamp and overflowed lands have been granted by the state hold them in trust for the public school fund, and can only dispose of them as pointed out by statute. Their powers are limited and defined by law. These statutes constitute their warrant of attorney. Whenever they step outside of and beyond this statutory authority, their acts are void. Saline County v. Wilson, 61 Mo. 237; Wolcott v. Lawrence County, 26 Mo. 275; Steines v. Franklin County, 48 Mo. 167. Persons dealing with such agents are bound to take notice of their powers and authority.' Sturgeon v. Hampton, 88 Mo. 203; Railroad v. Hatton, 102 Mo. 45; Railroad v. Wayne County, 125 Mo. 351."

The case of Wheeler v. Land Co., supra, was upon the facts, making for alleged invalidity of a patent involved therein, almost on all fours with the case at bar. In the latter case (193 Mo. at page 292, 91 S. W. 1053) it was said:

"Where the antagonistic parties both claim under a common grantor, if the property in question belonged to the grantor in his own right, to do with it as he pleased, to sell it or give it away, if the prior grant was a gift, and the other a sale for value, the holder of the latter could not impeach that of the former, by showing that it was without a valuable consideration. But where the common source was a public trustee, who was authorized to sell only for a valuable consideration, yet who, in disregard of the trust, essayed to convey the property as a mere gift, a party holding a deed from the trustee, executed in good faith for a valuable consideration, is entitled, in a suit in which the respective titles are the subject of adjudication, to show the total want of consideration in the deed of gift, in order to have it adjudged invalid. Whether this would be so in case there had been an intervention of a mesne conveyance to an innocent purchaser for value is not a question in this case, for here we are dealing with the original grantee in the patent, which is assailed for want of consideration. Whatever differences of opinion there may be in other particulars in regard to the rights and duties of the counties in dealing with these swamp lands, all agree that the counties hold the lands in trust for a purpose or purposes declared by law, and that the counties may sell the lands, but no one contends that a county may give the land away without any valuable consideration."

Again, it was said in the Wheeler Case, supra, 193 Mo. at page 290, 91 S. W. 1052:

"The plaintiff refers to Simpson v. Stoddard County, 173 Mo. 1. c. 458, 459, wherein it is said that a patent to swamp lands from the county, regular on its face and based on orders of the county court, is valid until set aside by appropriate proceedings; that 'it is not absolutely void, but may be avoided in an action for that purpose, upon a showing of independent, unauthorized acts upon which the instrument is based'; and it is contended that that means that the patent is valid until it is set aside in a suit instituted by the county for that purpose. But that is not what the court said in that case, and is not what was meant. If that were the law, then a party who held a valid patent from the county could have no relief from another patent, that may have been issued by the county, which, though fair on its face, was founded

on a false bottom, until the county itself might see fit to interfere. If the county had conveyed its title by another patent that was valid, it had no further interest in the land, and unless the other patent contained some covenant or agreement, express or implied, which would render the county liable for a breach, the county would have no such interest as would enable it to maintain a suit to set aside the alleged unauthorized patent. But, whether the county could or could not sue, the party who held the valid title could sue to defend his own title, or to put it at rest."

Another line of decisions of the Supreme Court of Missouri is, perhaps, to be found in the case of Simpson v. Stoddard County, 173 Mo. 421, 73 S. W. 700, and certainly in Brinkerhoff v. Juden, 255 Mo. 698, 164 S. W. 523. The former of the above decisions is, however, construed in the case of Wheeler v. Reynolds Land Co., supra, in line with my views, and consistent with the long line of cases above cited. In the latter it was held that, while a county itself may bring an action to set aside as fraudulent a senior patent to swamp lands conveyed without consideration, or for a consideration not warranted by law, neither one holding under a junior patent nor a grantee from such junior patentee may do so. This view is bottomed upon the case of Weissenfels v. Cable, 208 Mo. 515, 106 S. W. 1028, and upon section 2277, R. S. Mo. 1919. That this view is correct when applied to individuals, dealing with their own private property, is too plain for argument. If, however, private property were so dealt with in the teeth of a trust evidenced by muniments in the chain of title, there might be doubt of the proposition,' or if, as here, the grantee had both actual and constructive knowledge of the fraud and the violated trust when he took the land. But I need not pass on this question touching the probable status of one dealing with private property, for that is not the case here presented. Here plaintiffs, as the heirs of Wylie P. Sugg, are in privity with him. Wylie P. Sugg himself assumed the completion of the so-called contract for the making navigable of the stagnant slough called Varner river, and actually did a large part of such work as was done thereon.

These swamp lands were granted to the state of Missouri by the United States, and by the state of Missouri to Dunklin county, by certain statutes, which statutes are to be read into the patents transferring title. There were two trusts written into these statutes. These statutes were public laws, of which all persons dealing with these lands were required to take notice. More especially are those in privity with the original fraud required to notice these statutes, which statutes thus became conditions written into the patents themselves, and binding till the title had legally emanated from the county. Thereafter, of course, the land in the hands of private owners fell within the Brinkerhoff Case, and may be governed by the statute last supra. At least the Supreme Court of Missouri has so construed section 2277, supra.

[3] Not only was this the law as to swamp lands, till the Brinkerhoff Case was ruled, but it was the general and well-settled rule in Missouri as to statutory officers; that is to say, it is the law of Missouri that all persons dealing with statutory officers, of whatever kind, must, when the powers and duties of those officers are prescribed by statutes, take notice of such statutes, and when a statute is not followed, but departed from, the acts of the officer who disregards the statute are void as to

the county. In the case of Lamar Tp. v. Lamar, 261 Mo. loc. cit. 189, 169 S. W. 15, Ann. Cas. 1916D, 740, it was said:

"Officers are creatures of the law, whose duties are usually fully provided for by statutes. In a way they are agents, but they are never general agents, in the sense that they are hampered by neither custom nor law, and in the sense that they are absolutely free to follow their own volition. Persons dealing with them do so always with full knowledge of the limitations of their agency, and of the laws which, prescribing their duties, hedge them about. They are trustees as to the public money which comes to their hands. The rules which govern this trust are the law pursuant to which the money is paid to them and the law by which they in turn pay it out. Manifestly none of the reasons which operate to render recovery of money voluntarily paid under a mistake of law by a private person, applies to an officer. The law which fixes his duties is his power of attorney; if he neglect to follow it, his cestui que trust ought not to suffer. In fact, public policy requires that all officers be required to perform their duties within the strict limits of their legal authority."

Of course, it is not contended that one who bought swamp lands and paid therefor a consideration in cash, as required by the law in force at the time of the purchase, had to follow the proceeds, and at his peril see to it that these proceeds were covered into the school fund, or used in drainage or reclamation. It is probable, as forecast, and as held by the Supreme Court of Missouri in the case of Wheeler v. Reynolds Land Co., supra, that the case of Simpson v. Stoddard County can upon its facts be reconciled with the views here; for that was a case which turned upon a patent made on a consideration paid on a compromise of a controversy arising from a sale of swamp lands by virtue of a general execution against the county. The cases of Wheeler v. Reynolds Land Co., as stated, and as seen from the quoted excerpt, and Bayless v. Gibbs, both supra, distinguish it. But the case of Brinkerhoff v. Juden, supra, is difficult to distinguish. It mayhap likewise can, on its facts, be distinguished; for it involved a valid contract for the construction of a drainage ditch, which ditch was in fact never constructed as by contract agreed—in short, the contract was valid, but the performance was, in a way of speaking, invalid.

[4] Here in the case at bar, however, not only was the contract unlawful and unwarranted at its incipiency, but the performance thereof was, as the Supreme Court said, a "huge joke." Ordinarily, in a case like this, a federal court is bound by the construction put by the highest court of a state upon the statutes of that state. To this rule there are certain exceptions, however. These exceptions are well pointed out by the Supreme Court of the United States in the case of Kuhn v. Coal Co., 215 U. S. loc. cit. 360, 30 Sup. Ct. 143, 54 L. Ed. 228, where it was said:

"We take it, then, that it is no longer to be questioned that the federal courts, in determining cases before them, are to be guided by the following rules: (1) When administering state laws, and determining rights accruing under those laws, the jurisdiction of the federal court is an independent one, not subordinate to, but co-ordinate and concurrent with, the jurisdiction of the state courts. (2) Where, before the rights of the parties accrued, certain rules relating to real estate have been so established by state decisions as to become rules of property and action in the state, those rules are accepted by the federal court as authoritative declarations of the law of the state. (3) But where the law of the state has not been thus settled, it is not only the

right, but the duty, of the federal court to exercise its own judgment, as it also always does when the case before it depends upon the doctrines of commercial law and general jurisprudence. (4) So, when contracts and transactions are entered into and rights have accrued under a particular state of the local decisions, or when there has been no decision by the state court on the particular question involved, then the federal courts properly claim the right to give effect to their own judgment as to what is the law of the state applicable to the case, even where a different view has been expressed by the state court after the rights of parties accrued. But even in such cases, for the sake of comity and to avoid confusion, the federal court should always lean to an agreement with the state court, if the question is balanced with doubt."

When the patent under which defendant claims title was issued to its mesne grantor on the 5th day of August, 1899, the well-settled law of Missouri was that:

"The trust was not simply a personal trust. It ran with the land. Therefore there could be no room for invoking the doctrine of innocent purchaser for value and without notice, for, the trust being one declared by the act which vested title in the county, every person is presumed to know the law, and is also presumed to have notice of the character of the county's title, and the terms and conditions upon which the county was authorized to sell it." State ex rel. v. Crumb, 157 Mo. loc. cit. 558, 57 S. W. 1033.

While the above case was not decided for some 10 months after the issuance of the patent to Virgil McKay, under whom defendant claims, yet the rule announced therein had then been the settled law of Missouri as to swamp lands for more than 40 years, as the cases cited above abundantly show. It was therefore a rule of property, on which defendant was entitled to rely; a fortiori, since defendant's title came down to it from the county through warranty deeds including the patent itself, which was a warranty. The only exceptions are found in certain deeds in defendant's claim of title, whereby for convenience of transfer the lands were quitclaimed in trust.

The defense of laches is raised also by defendant; but, in the view of the case already taken, there would seem to be no necessity for my going into this question.

It is also urged that the Supreme Court of Missouri, in the case of St. Francis Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45, and the Circuit Court of Appeals of this Circuit, in the case of Byrd v. Hall, 227 Fed. 537, 142 C. C. A. 169, having held valid the sale made by the probate court of Dunklin county, the question of the validity of this sale is settled, and that the decisions in the above cases are binding as to the lands here in controversy. For the reasons already given, I need not take up time or space to rule this question.

It is also urged by defendant that plaintiffs are estopped from claiming these lands, for that the proof shows, and the Supreme Court of Missouri held, touching the lands involved in the instant suit and other lands in all things similarly situated and in the identical legal status (St. Francis Mill Co. v. Sugg, 206 Mo. 148, 104 S. W. 45), that plaintiffs, after the entry of the decree of 1880, took by way of compromise, in the case wherein the said decree was entered, 2,000 acres which they either sold or which they now hold. Unquestionably this holding was made. St. Francis Mill Co. v. Sugg, supra. But, for the reasons already set forth, I do not deem it necessary to pass on this defense of estoppel, since the case rides off on other grounds.

I am content to hold, for the reasons already stated, that plaintiffs have no title; and, since they must recover, if at all, on the strength of their own title, and not on any alleged weakness in that of defendant, I find and rule that they have no case. In this situation, it is almost a useless labor to take up the question of defendant's title on its counterclaim. This is so for obvious reasons. But since the result of the views above expressed is that the patent to Wm. S. Sugg was void; since the ancestor of plaintiffs was adjudged to have taken title in fraud of George Rogers (though it is clear that the last point is not necessary to the conclusion); and since George Rogers solemnly disclaimed ownership of these lands, and at his suit obtained a decree in this court to the effect that the title to them had never passed to Wm. S. Sugg, and so, of course, never passed to said Rogers—it would seem to follow that, on the 5th day of August, 1899, the title thereto was in Dunklin county. So that county had the right, as it did on that day, to convey and warrant the title to these lands to Virgil McKay, under whom defendant holds, by unchallenged mesne conveyances.

The finding of the law and the facts are upon the main case in favor of defendant and against plaintiffs, and on the counterclaim (thus by the result become substantially ex parte) in favor of defendant. A decree may be drawn and submitted accordingly, adjudging that plaintiffs have no right, title, estate, or interest of any kind, quality, or quantity whatever in and to the west half of section 10 in township 16 north of range 10 east, in Dunklin county, Mo., and that the title in and to the above-described lands be adjudged and decreed, as against plaintiffs, to be in defendant in fee simple, and that its title thereto be forever quieted.

And so it is ordered.